**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ORSON BENN,

       Petitioner,

v.                                                        Case No. 8:12-cv-831-T-36MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## <u>ORDER</u>

Petitioner Orson Benn, an inmate in the Florida Department of Corrections, filed through counsel a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and memorandum of law (Dkt. 2).  He challenges his convictions entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, in 2008.  Respondent filed a response (Dkt. 12), and Benn filed a reply (Dkt. 17).  Upon review, the petition must be denied.

## PROCEDURAL HISTORY

A jury convicted Benn of racketeering (count one), conspiracy to commit racketeering (count two), and grand theft (counts five, nine, and eleven). (Dkt. 14, Ex. J, Vol. 7, pp. 1093-94.)  On counts one and two, Benn was sentenced to eighteen years in prison, followed by twelve years of probation.   (Id., pp. 1159-60. )  On counts five, nine, and eleven, he received terms of twelve years of probation.  (Id., pp. 1161-63.)  The state appellate court *per curiam* affirmed his convictions and sentences.  (Dkt. 14, Ex. D.)  Benn filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.

(Dkt. 14, Ex. EE, Motion for Post-Conviction Relief Pursuant to Florida Rules of Criminal Procedure 3.850.)  The state court summarily denied all claims but ground two, which it dismissed with leave to amend.  (Dkt. 14, Ex. EE, Order on Defendant's Motion for Postconviction Relief Pursuant to Florida Rules of Criminal Procedure 3.850.)  The court denied Benn's amended version of ground two and his motion for rehearing.  (Dkt. 14, Ex. EE, Order on Defendant's Motion to Amend Issue 2 of 3.850 Motion for Postconviction Relief and Motion for Rehearing of Issues 1, 2, 3, 4, and 5.)  The state appellate court affirmed the rejection of Benn's postconviction claims in a written opinion.  *Benn v. State*, 77 So.3d 805 (Fla. 2d DCA 2011).  (Dkt. 14, Ex. AA.)  Respondent does not contest the timeliness of Benn's federal habeas petition.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court. Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied–the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal law, as determined by the
> Supreme Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States." Under the "contrary to" clause, a
> federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if
> the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.   Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state court identifies
> the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law

is objectively unreasonable . . . an unreasonable application is different from an incorrect

one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus

from a federal court, a state prisoner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*,

272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529

U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).

The state appellate court affirmed Benn's convictions and sentences in a *per curiam* decision without a written opinion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011). Benn must overcome by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A);   *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").   *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).   A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."   *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.   *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Pruitt*, 348 F.3d at 1358.   The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.

*Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.

*Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

## BACKGROUND

### Factual Background

The State of Florida charged Benn in connection with fraud that, in very broad terms, was alleged to have occurred as follows. Several of Benn's co-defendants established mortgage brokerage and construction businesses in Florida.  In marketing their services to low-income homeowners, they encouraged the homeowners to take out mortgage loans to pay for repairs and renovations on their homes and prepared and submitted the loan applications.  Co-defendant Scott Almeida, a mortgage broker, submitted applications containing falsified documents to mortgage lender Argent Mortgage Company ("Argent"). These submissions would include documentation overstating a homeowner's income if the actual income was insufficient to qualify for the loan.  Benn worked for Argent in New York. He "cleared" or approved these documents, knowing that they were fraudulent, in exchange for payment from Almeida.  When Argent released the funds, the co-defendants appropriated a portion of the money.  Insufficient funds remained to perform or complete the construction work on the homes.

### Pre-Trial Motions

In October of 2005, Benn voluntarily traveled from New York to Tampa, Florida, to be interviewed by an Assistant Statewide Prosecutor[1] and others.  Benn retained an

---

[1] Benn was charged with offenses in numerous counties covered by different Judicial Circuits in Florida.  He was also charged under the Florida RICO (Racketeer Influenced and Corrupt Organization) Act. Accordingly, Benn's case was prosecuted by the Office of Statewide Prosecution.  *See* Art. IV, § (4)(b), Fla. Const.; § 16.56(1)(a)(3), Fla. Stat.

attorney, who was present during the interview.[2]  Benn needed to stop the interview to make his return flight to New York, but agreed to continue it later.  In July of 2006, an investigative team from Florida including the prosecutor and an agent from the Florida Department of Law Enforcement ("FDLE") traveled to New York and interviewed Benn. During the interview, at which his attorney was not present, Benn made incriminating statements.

Benn was charged by felony information filed on July 16, 2007.  (Dkt. 14, Ex. J, Vol. 1, pp. 88-165; Vol. 2, pp. 166-289.)[3]  Benn filed motions to dismiss the charges or alternatively to suppress his statements made during the New York interview.  After conducting hearings on both of these motions, the state trial court denied them.  The court made the following findings of fact:

> In relation to a criminal investigation regarding Florida mortgages, in or about October 2005, Defendant contacted [counsel] to accompany him to a meeting with Florida law enforcement and [the prosecutor] from the Office of the Statewide Prosecutors Office in relation to a criminal investigation. [Counsel] testified that he advised Defendant against giving any statements to investigators, but that Defendant wished to.  Thereafter, Defendant, voluntarily and at his own expense, traveled from his home in New York to the Tampa offices of the Statewide Prosecutor to be interviewed.  After several hours of interviewing, the interview concluded because Defendant had to catch his return flight.  However, Defendant had made it clear that he wished to assist with the investigation and agreed to continue the interview at a later date. . . .
>
> In or about July 2006, [the prosecutor] and an investigative team from Florida traveled to New York to conduct numerous interviews in relation to the investigation.  In preparation for that trip, [the prosecutor] called and spoke to [counsel] to ascertain if [counsel] still represented Defendant and

---

[2] Benn proceed to trial with a different attorney. The Assistant Statewide Prosecutor who interviewed him in pre-trial proceedings did not participate in the trial.

[3] The State subsequently filed an amended felony information on March 25, 2008 (Dkt. 14, Ex. J, Vol. 3, pp. 506-517; Vol. 4, pp. 518- 55) and a second amended felony information on July 11, 2008 (Dkt. 14, Ex. J, Vol. 6, pp. 947-95).

to explain that the investigative team would like to continue the interview with Defendant while the team was in New York. [Counsel] testified that [the prosecutor] even suggested that [counsel] accompany Defendant [sic] to New York. [The prosecutor] testified that [counsel] stated that he had not had any communication with Defendant in months, but that he would attempt to contact him. When no response was received, [the prosecutor] called [counsel] approximately two more times, and then sent a facsimile to [counsel]. . . . Investigator Mike Rossiter also sent e-mail correspondence to Defendant informing him of the planned trip. . . . No responses from [counsel] or Defendant were received prior to the trip to New York.

In New York, on or about July 18, 2006, after a full day of interviewing other witnesses, the investigative team led by [the prosecutor] decided to attempt to locate Defendant, who was believed to have recently moved. . . . Between 8:30 p.m. and 9:00 p.m. the team arrived at the home of Defendant. Defendant answered the door and indicated that he remembered [the prosecutor]. The team explained that they wished to continue the interview that had begun in Tampa. Defendant indicated that he would also like to continue the interview. [The prosecutor] detailed to Defendant the efforts that were made to contact [counsel], but testified that he was uncertain as to whether [counsel] still represented Defendant.

Defendant suggested conducting the interview at a nearby diner. Defendant drove separately from members of the investigative team. Defendant indicated that he wished to continue the interview without an attorney present. Defendant indicated that he was speaking voluntarily and of his own free will. Defendant was told that he was not in custody and that the investigative team did not have any authority to detain him in New York, and that he was free to leave or terminate the interview at any time.

Following the interview, [the prosecutor] received a letter from [counsel] dated July 19, 2006 in which [counsel] explains that Defendant had called [counsel] to tell him of the interview. In it, [counsel] concedes that he had no valid contact information for Defendant prior to date of the letter.

The Defendant was charged by information approximately one year later, in July 2007.

(Dkt. 14, Ex. J, Vol. 3, pp. 485-87.)[4]  Benn's challenge to the denial of these motions on

direct appeal was rejected by the state appellate court.

## DISCUSSION

## Ground One:  Benn's Sixth Amendment Right to Counsel Was Violated When His

---

[4] This quotation is from the state court's order denying Benn's motion to suppress.  The state court's order denying his motion to dismiss contains a section setting forth nearly identical findings of fact.  (Dkt. 14, Ex. J, Vol. 3, pp. 481-83.)

**Trial Counsel Abandoned Benn At a Critical Stage of His Representation During the Investigation.**

Benn argues that his Sixth Amendment right to counsel was violated when counsel abandoned him during "critical portions" of the State's pre-trial investigation into his activities. (Dkt. 2, p. 14.)  Benn asserts that counsel failed to inform him that the prosecutor wanted to continue the interview in New York and "failed to follow through on the attempts to locate Benn in New York."  (Dkt. 2, p. 14.)  He states that counsel was aware of his location and knew that Benn wanted him to be present during any further interview.  Benn asserts that his "uncounseled statement became the pivotal statements that were used by the State in prosecuting" him. (Dkt. 2, p. 16.)

The Sixth Amendment guarantees a person accused of a crime the right to assistance of counsel for his defense.  The Supreme Court has explained that the Sixth Amendment right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).  *See also McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  It is the initiation of judicial criminal proceedings that "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."  *Kirby,* 406 U.S. at 689-90.

Benn fails to present a valid federal constitutional claim.  The interview in New York occurred on July 18, 2006.  Benn was charged nearly one year later, when the State filed a felony  information on July 16, 2007.  The record further reflects that, through counsel, Benn entered a plea of not guilty and waived arraignment on July 19, 2007.  (Dkt. 14, Ex.

J, Vol. 2, p. 291.)[5]   Accordingly, Benn's Sixth Amendment right to counsel had not yet attached when the relevant conduct of counsel occurred.   Benn cannot, therefore, demonstrate a Sixth Amendment violation.  *See Philmore v. McNeil*, 575 F.3d 1251, 1258-59 (11th Cir. 2009) ("Absent a Sixth Amendment right to counsel, there can be no violation of the Sixth Amendment right to the effective assistance of counsel.").

Even assuming Benn's Sixth Amendment right to counsel had attached at the time of the interview, Benn cannot show entitlement to relief on this claim of ineffective assistance.  Benn raised this claim in his postconviction motion.  Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner.  *Id.* at 687.  In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.  To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel is presumed to have provided effective assistance.  *Id.* at 689-90. Sustaining a claim of ineffective assistance of counsel is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted).  If a court can

---

[5] The state court docket contains a July 19, 2007 entry indicating Benn was in custody in New York at the Suffern County Jail.  (Dkt. 14, Ex. J, Vol. 1, p. 4.)

dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong.   *Strickland*, 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

Relying on the motion to dismiss and motion to suppress proceedings, the state court found that Benn failed to show counsel abandoned him.  The court noted that counsel testified he attempted to contact Benn, and he informed the prosecutor Benn would continue the interview in the presence of counsel.   The state court also concluded that Benn chose to make a statement without the presence of counsel, and that he could have declined to speak with investigators.   (Ex. EE, Order on Defendant's Motion for Postconviction Relief Pursuant to Florida Rules of Criminal Procedure Rule 3.850.)[6]  Benn does not establish that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.   Benn is not entitled to relief on Ground One.

**Ground Two:  Benn's Due Process Rights Were Violated When the State Introduced Statements Obtained in Violation of His Sixth Amendment Right to Counsel.**

Benn challenges the state court's denial of his motion to dismiss and motion to suppress, which resulted in his statements being introduced into evidence at trial, by bringing a federal due process claim.  Benn raised this claim on direct appeal.  He argues that "the State obtained Benn's statement under a set of circumstances" that violated his

---

[6] In his reply, Benn mentions the Fifth Amendment for the first time in regard to Ground One.  (Dkt. 17, p. 1.)  This cursory reference, upon which he does not elaborate, cannot warrant relief.  Benn also asserted a Fifth Amendment violation, without specifying more, in his postconviction motion.  He does not demonstrate that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law.

federal due process rights.  (Dkt. 2, p. 17.)  Specifically, he contends that "the conduct of the prosecutor and the State law enforcement officials – asserting their color of office, contacting Benn without his attorney's consent at a time Benn would be unable to get in touch with his attorney, pressuring him to speak to them, and eliciting an uncounseled confession from him – violated his due process rights."  (Dkt. 2, p. 19.)  He claims that the prosecutor violated the Rules Regulating The Florida Bar.[7]  Benn claims that his case should have been dismissed or, alternatively, his incriminating statements should have been suppressed because of these actions.

Benn has failed to establish a federal claim, and none of the circumstances he identifies warrants federal habeas relief.  The components of his claim concern matters of state law and regulation.  Issues of state law are not cognizable in a federal habeas action. *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright,* 699 F.2d 1053 (11th Cir. 1983).   This is true even though the claim may be "couched" as an allegation of federal due process.  *See Branan*, 861 F.2d  at 1508 ("It is our opinion that the petition raises issues of state law only and, thus, must be dismissed.  Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely 'couched in terms of equal protection and due process.'").   "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

---

[7] "In representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."  R. Regulating Fla. Bar 4-4.2.

Benn points to actions of the investigative team from Florida who interviewed him in New York.  Benn's claim that the prosecutor violated the Rules Regulating The Florida Bar by contacting Benn while he was represented by an attorney involves an interpretation of state regulations that does not establish a federal claim.[8]  Similarly, the "color of office" doctrine[9] Benn cites is a state law matter involving jurisdictional limitations on law enforcement officers in Florida that cannot support federal habeas relief.[10]  In connection with his "color of office" argument, Benn asserts that the investigative team coerced him into making an uncounseled statement.  He appears to rely on allegations that the FDLE agent who appeared at his home displayed her badge, that the prosecutor told Benn he wanted to continue an official interview as part of a criminal investigation, and that the investigators arrived at a time when he was unable to contact his attorney.  In rejecting his pre-trial motions, however, the state court found that Benn indicated he was speaking voluntarily and of his own free will during the interview.  (Id., pp. 482-83, 486-87.)  The court's extensive factual findings in denying Benn's pre-trial motions are supported by the

---

[8] Citing state law decisions, the trial court found that, even assuming such a violation occurred, dismissal of the charges or suppression of Benn's statements were not appropriate remedies.  (Id., pp. 484, 489.)

[9] This doctrine provides that "law enforcement officials have the same ability to make an arrest as does a private citizen when they are outside their jurisdiction, but law enforcement officials outside their jurisdiction do not have superior power of arrest than private citizens." *State v. Price*, 74 So.3d 528, 530 (Fla. 2d DCA 2011) (citing *Phoenix v. State*, 455 So.2d 1024, 1025 (Fla. 1984)).  This doctrine "pertains 'only to prevent law enforcement officials from using the powers of their office to observe unlawful activity or gain access to evidence not available to a private citizen.'"  *Id.* (quoting *Phoenix*, 455 So.2d at 1025).  *See also United States v. Ible*, 630 F.2d 389, 392-93 (5th Cir. 1980) (discussing the "color of office" doctrine as a matter of Florida law relevant to determining the validity of an arrest by an officer outside of the officer's jurisdiction).

[10] Furthermore, the state trial court determined that the Florida agents acted properly in accordance with this state law provision.  Specifically, in its order denying Benn's motion to suppress, the state court concluded that "the actions of the investigators of interviewing Defendant in New York were not unlawful." (Dkt. 14, Ex. J, Vol. 3, p. 488.)

record of the pre-trial hearings. (Dkt. 14, Ex. J, Vol. 2, pp. 335-36; Vol. 3, pp. 348-53, 366-67.)[11] Benn does not establish any coercion on the part of the investigative team, nor does he demonstrate that his incriminating statement was anything but voluntary. Accordingly, Benn does not show a federal due process violation on the bases alleged.

Finally, to the extent Benn claims a violation of his Sixth Amendment right to counsel in connection with this claim, it must fail. First, it appears to be unexhausted because Benn did not raise this aspect of his claim on direct appeal. (Dkt. 14, Ex. A, pp. 35-43.) Notwithstanding, as addressed, his right to counsel under the Sixth Amendment had not yet attached at the time of the interview. The court came to this conclusion in denying Benn's motion to dismiss. (Dkt. 14, Ex. J, Vol. 3, p. 483.) The court further found that, even if the right had attached, Benn nevertheless agreed to talk without counsel. (Id.)[12] With regard to both motions, the state court found that Benn voluntarily chose to speak without an attorney. Benn does not establish a violation of his Sixth Amendment right to

---

[11] Benn's statement was recorded and a condensed version of the recording was played for the jury. The trial transcript lends support to the state court's finding of fact by substantiating the pre-trial testimony concerning the interview. It provides that Benn indicated he was speaking to the investigators freely and voluntarily without the presence of his attorney, and that the prosecutor informed Benn that he was not in custody, the investigators had no authority, he could leave at any time, and he should inform them if he wanted an attorney. (Dkt. 14, Ex. J, Vol. 13, pp. 1040-41; 1089-90.)

[12] In his reply, Benn for the first time alleges that the introduction of the statements violated his Fifth Amendment right against self-incrimination. (Dkt. 17, p. 10.) Benn's claim is vague and conclusory. To the extent he attempts to raise a substantive claim, he is precluded from doing so. Petitioners are generally prohibited from raising new claims in a reply. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); Fed. R. Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party). *See also Pruitt v. United States*, 274 F.3d 1315, 1318-19 (11th Cir. 2001); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). Furthermore, the claim would be unexhausted because Benn failed to raise it on direct appeal. (Dkt. 14, Ex. A.) A petitioner must invoke one complete round of the state's established review process in order to exhaust his claims. *See Pruitt*, 348 F.3d at 1358-59. State procedural rules do not provide for second direct appeals. *See* Fla. R. App. P. 9.140. Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Benn does not argue or demonstrate that either exception applies to overcome the default. *See id.*

counsel and thus establishes no circumstance in support of his overall due process claim.[13]

Benn does not demonstrate that the state appellate court's rejection of his due process challenge to the denial of his motion to dismiss and motion to suppress was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  Ground Two warrants no relief.

**Ground Three:  Benn's Due Process Rights Were Violated When the Prosecutor Relied Extensively on the Introduced Testimony and Evidence of the Dismissed Construction Fraud Counts During the Closing Arguments."**

Benn was charged with three counts of grand theft under §§ 812.014(2)(b)(1), 777.011, Fla. Stat.  (Dkt. 14, Ex. J, Vol. 6, pp. 947-48.)  He was also charged with one count of racketeering under § 895.03(3), Fla. Stat., and one count of conspiracy to commit racketeering under § 895.03(4), Fla. Stat.  (Id., p. 947.)  To establish a substantive racketeering charge under § 895.03(3), Fla. Stat.:

> [T]he State must prove the defendant's "(1) conduct or participation in an enterprise[ ] through (2) a pattern of racketeering activity." *Doorbal v. State*, 983 So.2d 464, 492 (Fla. 2008). "Racketeering activity" is "defined to include certain specified crimes under state law and under the federal RICO Act," . . . *Carlson v. State*, 405 So.2d 173, 174 (Fla.1981); § 895.02(1)(b), Fla. Stat. (2003); 18 U.S.C. § 1961(1).These specified crimes are typically called predicate acts. Thus, the State must establish a "pattern of racketeering activity" by presenting evidence that the defendant engaged in at least two predicate acts that have the same or similar intents, results, accomplices, victims, or methods of commission. *See Morgan v. State,* 117 So.3d 79, 81–82 (Fla. 2d DCA 2013); *Sanchez v. State*, 89 So.3d 912, 914 (Fla. 2d DCA 2012).

---

[13] In claim one of his postconviction motion, Benn repeated his argument that the state investigators unconstitutionally obtained his statements.  The state appellate court affirmed the postconviction court's summary denial of Benn's claim and his motion for rehearing.  Benn does not show that this decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

*de la Osa v. State*, 158 So. 3d 712, 725 (Fla. 4th DCA 2015).[14]

Conspiracy to commit racketeering under § 895.03(4), Fla. Stat., "may be proved in one of two ways. 'The government may either prove (1) that a defendant agreed to the overall objective of the conspiracy or (2) that the defendant personally committed two predicate acts, thereby participating in a single objective conspiracy.'" *Sanchez v. State*, 89 So.3d 912, 916 (Fla. 2d DCA 2012) (quoting *Mese v. State*, 824 So.2d 908, 917 (Fla. 3d DCA 2002)).

The charges of racketeering and conspiracy to commit racketeering named Benn in relation to twelve predicate incidents. Each predicate incident was comprised of obtaining a mortgage by false representation and grand theft. (Id., pp. 949-64, 970-85.) Thus, while substantive charges of grand theft were filed, grand theft was also relevant to the predicate incidents necessary to prove racketeering and conspiracy to commit racketeering. The grand theft encompassed both what was referred to in the state court proceedings as "mortgage fraud" and "construction fraud." The "mortgage fraud" involved inducing Argent to disburse funds through the falsified mortgage loan applications while the "construction fraud" involved appropriating funds once Argent disbursed them and failing to complete or perform the construction work for the homeowners in whose names the loans were obtained. Argent was considered the victim of the mortgage fraud and the homeowners were considered the victims of the construction fraud. Accordingly, both Argent and the individual homeowners were listed as victims of the substantive counts of grand theft and the grand theft listed under ten of the twelve predicate incidents on the

---

[14] An enterprise is defined as "any . . . group of individuals associated in fact although not a legal entity." § 895.02(3), Fla. Stat.

counts of racketeering and conspiracy to commit racketeering.  (Dkt. 14, Ex. J, Vol. 6, pp. 949-64, 970-85, 991-93.)   At trial, the State introduced evidence of the construction fraud that included testimony of co-defendants and homeowners.

After the State rested its case, defense counsel moved for a judgment of acquittal, arguing in part that the State's evidence did not connect Benn to any losses suffered by the homeowners.  (Dkt. 14, Ex. J, Vol. 15, pp. 1289-94.)   Acknowledging difficulties in establishing Benn's intent to defraud the homeowners as to the construction fraud, the State informed the trial court that it would proceed with Argent as the sole victim on the grand theft charges:

> [STATE]:   [O]n the grand theft issue as it pertains to the contracting work and whether it was actually started and when the intent to defraud or the intent necessary for the grand theft was formed.
>
> And, Judge, based on my review of the case and some of the other case law in this area, it appears as though - - it would be more prudent for us to proceed on the grand theft counts as it relates to having Argent as the victim, because some of the work was performed.   It's - - it's a little bit confusing as to some of that - - the intent issues.
>
> And just to make the racketeering predicates easier, and to avoid an appellate issue down the road should the  - - should an appellate court come back and say that that contracting work was started and, therefore, the intent wasn't formed until after, we would just like to proceed on those grand thefts with Argent as the victim.

(Id., pp. 1315-16.)   When the court asked the State whether it intended to amend the information or dismiss the charges as to the other named victims, the State confirmed that "[f]or the predicates and for the three substantive grand thefts, the only victim would be Argent Mortgage."  (Id., p. 1316.)

Later, after the State's initial closing argument and the defense's closing argument, counsel requested an independent act jury instruction.  (Dkt. 14, Ex. J, Vol. 18, pp. 1861-

62.)[15]   Although the court initially agreed to give the instruction, it reversed this decision after the State argued in part that the instruction was unnecessary given its agreement to drop the construction fraud theory.  (Id., pp. 1890-95, 1899, 1909-12, 1915, 1918-19, 1921-23.)  In requesting the court to reconsider, counsel presented several arguments, including an assertion that the State used evidence of the construction fraud in its case despite an inability to connect Benn to it.  (Id., pp. 1923-24.)  Counsel further stated that if the court would not give the instruction, he would move for a mistrial.  (Id., p. 1924.)  The trial court denied Benn's motion for mistrial.  (Id., p. 1927.)

Benn raises two claims within Ground Three of his federal habeas petition.  He has titled the claim as one alleging prosecutorial misconduct during closing arguments.  However, he also asserts that the "due process violation occurs when the Court did not grant a mistrial after complaint [sic] was amended and the State presented extensive prejudicial testimony regarding the counts that were dismissed."  (Dkt. 2, p. 22.)  In support, Benn asserts that the State presented prejudicial evidence of the construction fraud during trial.

(1)   Denial of Motion for Mistrial

Benn alleges that the trial court's denial of his motion for mistrial resulted in a federal

---

[15] Florida courts have addressed the applicability of the independent act instruction:

"The 'independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.' " *Pittman v. State*, 841 So.2d 690, 692 (Fla. 2d DCA 2003) (quoting *Ray v. State*, 755 So.2d 604, 609 (Fla.2000)). A defendant who does not participate in the independent act of his cofelon is exonerated from any punishment imposed for the independent act. *Id.*

*Upshaw v. State*, 871 So. 2d 1015, 1017 (Fla. 2d DCA 2004).

due process violation.   Benn argued on direct appeal that the trial court erred in not granting a mistrial on the basis that the construction fraud charges had been dropped and that a curative instruction could not remedy the prejudicial effect of evidence of the construction fraud.[16]  However, he failed to raise the constitutional dimension of this claim. (Dkt. 14, Ex. A, pp. 28-35.)  Accordingly, his claim is unexhausted.

A petitioner must make clear to the state court that he is raising a federal constitutional claim.  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Duncan*, 513 U.S. 364).  Simply asserting the facts necessary to support a federal claim is insufficient.  "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief."  *Id.* (quoting *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999)).  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Id.* (quoting *Anderson v. Harless*, 459 U.S. 4 (1982)).

Benn cannot return to state court to file a successive direct appeal. *See* Fla. R. App. P. 9.140.  Therefore, his unexhausted claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Benn does not argue or demonstrate that either the cause and prejudice or

---

[16] The court gave the following instruction to the jury: "You've heard testimony about damages due to lack of home repairs or renovations that the homeowners expected in this case.  You are only to consider the damages of Argent Mortgage Company, not the homeowners, when determining your verdict."  (Dkt. 14, Ex. J, Vol. 19, pp. 2018-19.)

fundamental miscarriage of justice exception applies to overcome this default.  *See id.*

Consequently, Benn is not entitled to relief on his claim concerning the court's denial of a

mistrial.[17]

> (2)     Prosecutorial Misconduct; Reliance on Construction Fraud Evidence During
>          Closing Argument

Benn also alleges that the State's extensive reliance on the evidence of construction

fraud during closing arguments amounted to a federal due process violation.  He claims

that this evidence was used to invoke sympathy for the homeowners.  Citing to several

pages of the trial transcript, Benn asserts that "[t]he State argued in closing that Benn was

responsible for the 'nightmare' these people who were 'just like everybody in Polk County'

had experienced, but that this 'really didn't matter' to Benn (who was not from Polk County

but New York)." (Dkt. 2, p. 24.)  The homeowners were relevant to the "construction fraud,"

a theory the State dropped when it agreed to proceed with Argent as the only victim of

grand theft.

Ground two of Benn's postconviction motion was dismissed without prejudice.  In

his amended version of ground two, Benn raised this claim of prosecutorial misconduct.

---

[17] In his reply, Benn for the first time states that "the claim was presented via a Sixth Amendment right to effective assistance of counsel for trial counsel's failure to object" and that the federal habeas court "reviews the matter under the Federal Constitutional right to effective assistance of counsel in the failure to object to the improper argument." (Dkt. 17, p. 13.)  To the extent Benn now attempts to raise a claim of ineffective assistance for failing to object and move for a mistrial when the State dropped the construction fraud theory, he cannot obtain relief.  Notwithstanding the bar on raising new claims in a reply, Benn cannot show entitlement to relief.  He raised this assertion in the initial version of Ground Two of his Rule 3.850 motion. The state court found that counsel had no basis to move for a mistrial because "[t]he testimony of the [homeowner] victims was still relevant to prove that the documentation submitted with their loan application was fraudulent." (Dkt. EE, Order on Defendant's Motion for Postconviction Relief Pursuant to Florida Rules of Criminal Procedure 3.850.)  The postconviction court denied rehearing. The state appellate court found that Benn's motion was without merit.  *Benn*, 77 So.3d at 806. Benn does not show that the state court's rejection of his claim  was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.

Benn's postconviction motion cited both federal and state law for the proposition that the State's comments were improper. The state court rejected his claim, finding no impropriety in the State's closing argument. (Dkt. 14, Ex. EE, February 16, 2011 Order on Defendant's Motion to Amend Issue 2 of 3.850 Motion for Postconviction Relief and Motion for Rehearing of Issues 1, 2, 3, 4, and 5.)

To establish a prosecutorial misconduct claim, Benn must show that the challenged conduct was both improper and prejudicially affected his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). Habeas relief is available based upon an improper prosecutorial remark only if it is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *See also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of the due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). *Darden*, 477 U.S. at 181, further explains:

> The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 [643] . . . (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642 . . . .

*Accord Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."), *cert. denied*, 480 U.S. 911 (1987). A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a

whole because "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995). *Accord United States v. Young*, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While he may not go beyond the evidence presented to the jury, the prosecutor is not limited to a bare recitation of the facts. The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). In Florida, "[w]hile wide latitude is permitted in closing argument, *see Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982), this latitude does not extend to permit improper argument." *Gore v. State*, 719 So.2d 1197, 2000 (Fla. 1998). *See also McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

Benn fails to meet his burden of showing that the prosecutor's comments were both improper and prejudiced his substantial rights. The remarks identified by Benn were made over the course of an especially lengthy closing argument. Considered in context of the entire trial, the prosecutor's comments, even if improper, neither rendered the trial fundamentally unfair nor infected the trial with such unfairness that the resulting convictions amount to a denial of due process. *Tucker*, 802 F.2d at 1296. Therefore, Benn does not

show that the state court's rejection of Benn's claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.[18]  Consequently, Benn is not entitled to relief on Ground Three.

Any of Petitioner's claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Benn's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is instructed to enter judgment against Benn and close this case.

It is further **ORDERED** that Benn is not entitled to a certificate of appealability.  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Benn "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Benn has not made this showing.  Finally, because Benn is not entitled to a

---

[18] Benn raised the claim of improper prosecutorial misconduct in sub-claim (a) of the initial version of ground two in his motion for postconviction relief.  The state postconviction court dismissed this claim due to Benn's failure to specify which arguments were improper.  While the state appellate court noted an inaccuracy in the postconviction court's order regarding the construction fraud, it nevertheless affirmed the order of dismissal and found Benn's motion to be without merit.  *Benn*, 77 So.3d at 806.  Benn fails to show entitlement to relief for the same reasons discussed within Ground Three.

certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on September 28, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to:

Counsel for Petitioner

Counsel for Respondent